# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## OFFICE OF SPECIAL MASTERS
No. 20-1048V

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | | |
| CLAUDIUS WILLIAMS, | * | Filed: February 20, 2025 |
| Petitioner, | * | |
| v. | * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | | |

## DECISION DISMISSING CASE[1]

On August 20, 2020, Claudius Williams filed a petition for compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petitioner alleges that an influenza vaccine she received on October 5, 2018, caused "adverse effects," including "symptoms of pain and abscesses." *See generally* Petition (ECF No. 1). The vaccine she received was administered by a Kentucky mobile vaccination entity that was later determined to have exercised inadequate safety control over its vaccines, resulting in numerous vaccinated individuals experiencing comparable abscess injuries.

Respondent opposes Petitioner's claim, arguing that the Act's "severity" requirement cannot be met. After a careful review of the entirety of the parties' submissions, I find there is not preponderant evidence that the alleged injury persisted for at least six months post-vaccination. *See* 42 U.S.C. § 300aa-11(c)(1)(D). Therefore, Petitioner's claim is not eligible to proceed within the Vaccine Program, and it must be dismissed.

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Ruling will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

## I.   Relevant Procedural History

This matter was initiated at the same time as a number of related petitions brought by similarly-situated claimants.[3] Respondent raised an overarching objection to these claims – that they did not fall within the ambit of the Program due to third-party negligence that resulted in the subsequent abscess injuries. The parties consented to resolution of entitlement in one "test case," the results of which could then be applied to the related cases. On April 25, 2024, I ruled in favor of the petitioner in the test case, finding that the administration of the influenza vaccine had caused him to experience a right shoulder skin abscess associated with a bacterial infection. *See Silvers v. Sec'y of Health & Hum. Servs.*, No. 20-1V, 2024 WL 2799285 (Fed. Cl. Spec. Mstr. Apr. 25, 2024).

On September 17, 2024, I held a telephonic status conference (under the auspices of the test case matter) to discuss the remaining cases. I proposed at that time that Respondent evaluate the related matters and determine if entitlement could be conceded in light of my ruling, or if facts specific to the remaining cases required different treatment. On October 10, 2024, the parties filed a joint status report in the four remaining cases, announcing that Petitioner did not intend to file additional evidence relevant to the issue of six-month severity and requesting deadlines for Rule 4(c) reports. I subsequently ordered the parties to file Rule 4(c) Reports in the related matters by November 15, 2024.

On October 31, 2024, Respondent filed a Rule 4(c) Report in this action, arguing that Petitioner was not entitled to compensation because of her failure to satisfy the Act's six-month severity requirement. (ECF No. 23). My preliminary review of the record suggested that this defense was meritorious, but I permitted Petitioner to file a brief showing cause why the petition should not be dismissed for inability to meet the severity requirement. Order to Show Cause, dated Nov. 1, 2024 (ECF No. 24). On December 17, 2024, Petitioner filed her response to the Order. Petitioner's Brief (ECF No. 25) ("Br."). On January 10, 2025, Respondent filed his opposition. Respondent's Opposition (ECF No. 27) ("Opp."). The matter is now ripe for decision.

## II.   Factual Background

Petitioner was born on December 7, 1962, and was 55 years old at the time of vaccination. Ex. 10 at 1-2. She received the flu vaccine on October 5, 2018, and it was administered by the same mobile vaccination entity discussed in *Silvers*. Ex. 10 at 1-2. The vaccination record does not identify which arm received the vaccination, but Petitioner represents that it was her right arm.

---

[3] *See generally Silvers v. Secretary of Health and Human Services* (No. 20-1V), *Stastny v. Secretary of Health and Human Services* (No. 20-22V), *Atkins v. Secretary of Health and Human Services* (No. 20-333V), and *Williams v. Secretary of Health and Human Services* (No. 20-1120V).

2

*Id.*; Petitioner's Affidavit, dated December 16, 2024 (ECF No. 25-1) ("Williams Aff."). A few days after getting the shot, a "bump" appeared on her shoulder and became red, itchy, and painful. Williams Aff. at 1. She also experienced burning in her upper arm and shoulder. *Id.* According to Petitioner, the injection site remained this way daily for approximately one to two months. *Id.*

On January 22, 2019 (approximately three and a half months after vaccination), Petitioner presented to the office of her primary care provider ("PCP"), Jonathan Wilding, M.D., for an annual physical.[4] Ex. 3 at 21. Petitioner reported she felt well "except for she had a bad reaction to a flu shot she was given at work on 5 October 2018." *Id.* She explained that others at her work had similar reactions to vaccines from Location Vaccination, and she had documentation from the Kentucky Department for Public Health ("KDPH") concerning this event. *Id.*; *see also* Ex. 7 at 1-2 (employer warning regarding reactions to Location Vaccination vaccines); Ex. 8 at 1-3 (KDPH correspondence regarding cluster of adverse vaccine reactions from Location Vaccination vaccines); Exs. 9, 11-14 (records pertaining to Location Vaccination investigation).

The appointment notes from that day state: "Patient's right shoulder is now all better and she has no discomfort at this time. As her reaction has resolved there is nothing for me to do in regard to this." Ex. 3 at 21. On exam, Petitioner's "right shoulder [was] without swelling or redness or heat[, with] no signs of serious complications involving her right deltoid related to the flu shot which she received at work." *Id.* at 22. Her right arm had "full range of motion and intact neurovascular status;" "[n]o rash;" and "[n]o subcutaneous nodules identified by palpation." *Id.* The notes indicate the presence of a "[s]mall scar," but it is not clear from the record that this was related to her recent flu vaccination. *Id.*

Almost three weeks later, on February 12, 2019, Petitioner called her PCP's office to request a referral to see an infectious disease physician "due to the flu shot received through her work." Ex. 3 at 67. In response, Dr. Wilding advised one of his nurses to call Petitioner to clarify why this referral was necessary, stating:

> "Call patient–I do not understand. Patient had flu vaccine given in October at work. Patient saw me in January and was fine and had no complaints. Has something changed? I will be happy to send her to an infectious disease doctor however I would just like to know why and what is going on."

*Id.* at 66.[5]

---

[4] Petitioner claims that she was seen by Megan Marshall, LPN, at this appointment, instead of Dr. Wilding. Br. at 2. Due to the record's lack of clarity, I am unable to conclude who authored the appointment notes from this day.

[5] Petitioner again claims that this entry was made by Nurse Marshall. Br. at 2-3. While it appears that Nurse Marshall's emails were included in the email chain, it is clear that Dr. Wilding authored the email cited above. Ex. 3 at 66.

On March 4, 2019, Petitioner again called her PCP requesting an infectious disease referral, explaining that other employees at her work "went to Infectious disease and were put on an antibiotic." Ex. 3 at 66. She wanted "a referral to go to Infectious disease so she can be put on an antibiotic, if they say she needs one." *Id.* Dr. Wilding reiterated that his response was the same as it was two weeks earlier. *Id.* at 66.

On March 19, 2019, Petitioner spoke to a nurse at her PCP's office and said her employer was telling everyone who received a flu shot that they needed to be on an antibiotic. Ex. 3 at 65. She said that another one of her coworkers was prescribed antibiotics for four months. *Id.* Petitioner also said, "her arm still has the spot from where the FLU vaccine was given and a knot." *Id.* That same day, Dr. Wilding placed an order referring Petitioner to an infectious disease physician, noting: "Order placed for patient to see infectious disease which she is insistent upon. Patient's arm was benign on my last examination however given her concern I will place the referral order." *Id.*

There is a subsequent gap of almost three months before Petitioner again sought treatment relating to this injury. On June 10, 2019, Petitioner presented to infectious disease specialist Makhawadee Pongruangporn, M.D. Ex. 4 at 7. Petitioner reported having an "abscess" and "symptoms of pain" after a vaccine injection. *Id.* She explained that there was "no more abscess" after she "buzzed out" the wound. *Id.* Dr. Pongruangporn noted: "[Petitioner's] wound is all healed and [she has] no other systemic symptoms." *Id.* On exam of Petitioner's right deltoid, there was an "old injection site scar, no induration, no tenderness." *Id.* at 6. Dr. Pongruangporn did not recommend treatment. *Id.*

There is no record of Petitioner receiving any additional treatment related to her shoulder abscess. In a July 21, 2020 affidavit, however, Petitioner states generally that her "injury persisted for over six months." Ex. 2 at 1.

### III.   Parties' Arguments

*Petitioner*

Petitioner claims that she experienced residual effects and/or complications for more than six months after the administration of the vaccine. Br. at 4. In support, she points to Dr. Pongruangporn's note from June 10, 2019, which records her claiming to the treater that she was experiencing "symptoms of pain." Ex. 4 at 7. Petitioner acknowledges that the note is not smoothly written, but argues that it very clearly states that Petitioner "has" symptoms of pain. Br. at 4. It does not state she "had" symptoms of pain that are now gone. *Id.*

4

The note also mentions that Petitioner's right hand was numb. Ex. 4 at 7. As Petitioner states in her affidavit, she did not have any arm or hand numbness prior to vaccination. Williams Aff. at 1. Petitioner also states that the numbness went away in July or August of 2019, leading Petitioner to believe that the numbness was a residual effect of the vaccine. *Id.* at 2.

Petitioner acknowledges that she did not experience constant, everyday pain, but argues that this does not defeat her claim. Br. at 5. She supports this by citing *Parsley v. Sec'y of Health and Hum. Servs.*, No. 8-781, 2011 WL 2463539, at *16 (Fed. Cl. Spec. Mstr. May 27, 2011), which describes "residual" pain as pain that never goes away *or that recurs after the original illness*. Br. at 5 (emphasis included). Petitioner argues, therefore, that plain language from the Vaccine Act and case law holds that "the residual language in the act is a somatic condition, which can 'recur after the original illness.'" *Id.* And Petitioner claims, "[t]hat is exactly what happened in this case." *Id.* Petitioner had recurring pain and numbness in her arm, which she voiced to Dr. Pongruangporn more than eight months after the vaccine administration. *Id.*

Furthermore, Petitioner clearly suffered residual effects because she stated she "has" pain at the June 10, 2019 visit with Dr. Pongruangporn. Br. at 5. To support this, Petitioner cites *Wright v. Sec'y of Health and Hum. Servs.*, 22 F.4th 999, 1005 (Fed. Cir. 2022), which states, "[r]esidual suggests something remaining or left behind from a vaccine injury…An effect that is 'residual' or 'left behind' is one that never goes away and recurs after the original illness." Petitioner argues that this is clearly what happened to her – she had a "recuring vaccination" injury that was causing her pain more than eight months after vaccination. Br. at 6. For these reasons, "Respondent's argument that she cannot meet the severity requirement is simply incorrect." *Id.*

*Respondent*

Respondent maintains that Petitioner has not satisfied the statutory "severity" requirement for her alleged vaccine injury. Opp. at 1. Respondent acknowledges that Petitioner attempts to allege that her injury persisted for more than six months in her more recent affidavit but argues that this does nothing to advance her claim. *Id.* at 4. To support this, Respondent cites *Hanna v. Sec'y of Health and Hum. Servs.*, No. 18-1455V, 2021 WL 3486248, at *11 (Fed. Cl. Spec. Mstr. July 15, 2021), which states that affidavits "specifically drafted for use in prosecution of petitioner's claim" are less reliable than "[c]ontemporaneous records prepared independently of litigation."

Respondent argues that Petitioner's affidavit testimony that the injection site was still painful to the touch during her appointment with Dr. Pongruangporn "is not sufficiently 'consistent, clear, cogent, and compelling' to overcome the trustworthiness of the contemporaneous medical records." Opp. at 4. The medical records repeatedly and unequivocally indicate that Petitioner's shoulder abscess had "resolved" and was "all better" approximately three

5

and a half months post vaccination. *Id.* (citing Ex. 3 at 21, 65, 66). In direct refutation of Petitioner's affidavit claims, Dr. Pongruangporn's physical exam of Petitioner's right arm found "no induration [and] no tenderness. *Id.* (citing Ex. 4 at 6). He noted that Petitioner's "wound is all healed and [she has] no other systemic symptoms. Ex. 4 at 6. Consistent with this conclusion, he did not recommend any treatment and advised Petitioner to "call for reevaluation" if she had "*recurrent* pain, swelling at injection site, or systematic symptoms." *Id.* (emphasis added). Respondent argues that it defies credulity to suggest Petitioner was actively dealing with injection site pain at this visit, and that Dr. Pongruangporn declined to prescribe antibiotics or recommend additional treatment. Opp. at 5.

Furthermore, while Dr. Pongruangporn's treatment record does make note of Petitioner's complaint of intermittent right-hand numbness while at work, he does not relate this to her "healed" shoulder abscess. Opp. at 5. Rather, his Assessment and Plan documents a "referral to [a] hand team for possible carpal tunnel syndrome." Ex. 4 at 7. Thus, because a petitioner may not receive an award of compensation based on her claims alone (42 U.S.C. § 300aa-13(a)(1)), Respondent argues that Petitioner has not met the severity requirement and is therefore not entitled to compensation. Opp. at 5.

## IV.   Statutory Severity Requirement

The petitioner carries the burden of establishing the matters required in the petition by a preponderance of the evidence. §13(a)(1)(A). One such requirement is "documentation demonstrating severity – generally, that the petitioner "suffered the residual effects or complications of such [vaccine-related] illness, disability, injury, or condition for more than 6 months after the administration of the vaccine." § 11(c)(1)(D)(i)9; *see also Black v. Sec'y of Health & Human Servs.*, 33 Fed. Cl. 546, 550 (1995) (reasoning that the "potential petitioner" must not only make a prima facie case, but clear a jurisdictional threshold, by "submitting supporting documentation which reasonably demonstrates that a special master has jurisdiction to hear the merits of the case"), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996) (internal citations omitted).

Congress has stated that the severity requirement was designed "to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine." H.R. REP. 100-391(I), at 699 (1987), reprinted in 1987 U.S.C.C.A.N. 2313–1, 2313–373, cited in *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011), *cert. denied*, 132 S.Ct. 1908 (2012); *Wright v. Sec'y of Health & Human Servs.*, 22 F.4th 999, 1002 (Fed. Cir. 2022).

The Act prohibits finding a petition requirement "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." §13(a)(1). Medical records must be considered, *see* §13(b)(1), and are generally afforded substantial weight. *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). *Murphy v. Sec'y of Health & Hum.*

6

*Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

It is thus certainly the case that factual matters required to prove elements of a Vaccine Act claim may be established by a mix of witness statements and record proof, with the special master required to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 (2013) (citing §12(d)(3); Vaccine Rule 8), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

## ANALYSIS

The medical records objectively preponderate in favor of a finding that Petitioner's injury did not persist for more than six months post-vaccination. At Petitioner's annual physical at her PCP's office on January 22, 2019 – a little more than three months after vaccination – her treater noted that Petitioner's shoulder "is now all better and she has no discomfort at this time. As her reaction has resolved there is nothing for me to do in regard to this." Ex. 3 at 21.

Petitioner's next contact with her doctor occurred in February 2019, when she emailed her PCP and requested a referral to see an infectious disease physician. Ex. 3 at 67. Petitioner did not report any pain or discomfort when she made this request, however. Rather, she appears to have sought the referral because other employees at her work who allegedly experienced an adverse reaction to the vaccine had themselves seen an infectious disease specialist and were prescribed antibiotics, and she thought she should do the same – perhaps out of an abundance of caution. Her PCP seemed unconcerned, however, and was even confused by the request, stating, "I do not understand…Patient saw me in January and was fine and had no complaints." *Id.* at 66. After Petitioner persisted with this request, her PCP reluctantly placed the referral order. *Id.* at 65.

Petitioner did later visit an infectious disease specialist, Dr. Pongruangporn, on June 10, 2019, more than eight months after her vaccination. She references this appointment to support her argument that her injury was ongoing. (I will note that the records from this appointment consist of many incomplete phrases and are difficult to decipher.) In the appointment notes, Dr. Pongruangporn writes that Petitioner "has symptoms of pain." Ex. 4 at 7. However, other portions of the doctor's note state that Petitioner's "wound is all healed" and lists "no other systemic symptoms." *Id.* Dr. Pongruangporn does not seem concerned by Petitioner's statements at this appointment, considering that he prescribes no medication and does not recommend any treatment. *Id.*

The overall confusing style of the notes, in addition to the *clear* statements that Petitioner's wound is healed, leads me to conclude that the statement about Petitioner's pain refers to *past* pain. If Petitioner was experiencing pain at the appointment, it is very likely that Dr. Pongruangporn would have offered a treatment option of some sort – and he did not. And this alleged evidence of ongoing pain is also outweighed by earlier evidence that Dr. Wilding saw no treatable condition, was bewildered as to why Petitioner expressed concern about it, and the fact that Petitioner did not then seek more treatment for several additional months thereafter.

Petitioner also argues that her right-hand numbness can be attributed the vaccine. Williams Aff. at 1-2. But the record of the visit with Dr. Pongruangporn does not seem to associate the two. In fact, Dr. Pongruangporn explicitly states that he is planning to refer Petitioner to the "hand team" for "possible carpal tunnel syndrome." Ex. 4 at 7. Dr. Pongruangporn does not suggest, at any point, that the numbness is a result of the vaccination from eight months prior.

To corroborate her severity contentions, Petitioner consistently cites to her affidavit, which was filed six years after she received the vaccine. *See generally* Williams Aff. As the Vaccine Act makes clear, however, "a special master or court may not make such a finding based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1); *see also Lett v. Sec'y of Health and Hum. Servs.*, 39 Fed. Cl. 259, 260 (1997) ("Ultimately, the petitioner must substantiate the occurrence of a compensable, vaccine-related injury with independent evidence"). And as I have discussed in detail above, the medical records do *not* corroborate Petitioner's claims of lingering pain and discomfort. I find, therefore, that the affidavit should be afforded little weight.

Program claimants must demonstrate the severity requirement by a preponderance of the evidence. *Song*, 31 Fed. Cl. at 66. The only evidence that Petitioner offers in support of her claim are medical records and her affidavit. But the medical records repeatedly state that Petitioner's abscess wound healed, with no lingering symptoms, well before the six-month severity deadline.[6] And her affidavit is unpersuasive when weighed alongside the medical records.

---

[6] This short-term duration is consistent with a vaccination-caused abscess injury. *See e.g.*, *Amorella-Moore v. Sec'y of Health & Hum. Servs.*, No. 91-1558V, 1992 WL 182194, at *1 (Fed. Cl. Spec. Mstr. July 13, 1992) (child who developed an abscess after a DPT vaccination received treatment and was discharged with only a small scar, 17 days post-vaccination). Indeed, even when severity is met in such circumstances, the relatively minor nature of this kind of condition typically results in extremely modest damages. *See e.g., Amorella*-Moore, 1992 WL 182194, at *1 ($500 in pain and suffering, given lack of evidence of ongoing impact from abscess injury); *Yost v. Sec'y of Health & Hum. Servs.*, No. 18-288V, 2022 WL 4593029 (Fed. Cl. Spec. Mstr. Aug. 29, 2022) ($10,000.00 in pain and suffering for an abscess and scarring at vaccination situs). Thus, it is hardly surprising to find that a vaccination-caused abscess could heal fully within a few months of onset.

## CONCLUSION

For these reasons, I find that Petitioner has failed to meet the severity requirement. Therefore, her claim is dismissed. In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[7]

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.